Mason BRASWELL, Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent-Appellant.

No. 71–2836.

United States Court of Appeals,
Fifth Circuit.

July 7, 1972.

Before TUTTLE, GEWIN and THORNBERRY, Circuit Judges.

GEWIN, Circuit Judge:

Mason Edward Braswell was convicted of aggravated assault in a Florida state court. The Florida court of appeals affirmed the conviction[1] and the Florida Supreme Court[2] and the United States Supreme Court denied certiorari.[3] Braswell then sought habeas corpus relief in the United States District Court. The district court granted the writ and ordered that unless the State afforded Braswell a new trial within a reasonable period of time the court would order his release, 330 F.Supp. 281 (S.D.Fla.1971). The State appeals. We modify and affirm.

Prior to Braswell's state court trial by jury his attorney requested that the "rule" regarding the sequestration of witnesses be invoked. The motion was granted and the court gave lengthy instructions concerning the "rule" and the penalties for its violation.

Testimony at the trial revealed that Braswell was involved in a barroom fight in which William Porter allegedly received a knife wound at the hands of Braswell. Three persons testified for the State that they saw Braswell stab Porter.

At the conclusion of the State's evidence Braswell called Elmer L. Rogers to the stand. Rogers had been with Braswell at the bar. Upon a query by the trial judge whether the prosecution had "Any questions on the Rule?", the state challenged Rogers' competency to testify on the ground that he had been present in the courtroom in violation of the "rule" during the presentation of the State's case.[4] Rogers stated that he

Robert L. Shevin, Atty. Gen. of Fla., Tallahassee, Fla., J. Robert Olian, Asst. Atty. Gen., Miami, Fla., for respondent-appellant.

Lewis S. Kimler, Asst. Public Defender, Miami, Fla. (court appointed), for petitioner-appellee.

1. Braswell v. State, 230 So.2d 192 (Fla. App.Ct.1970).

2. Braswell v. State, 237 So.2d 537 (Fla. 1970).

3. Braswell v. State, 400 U.S. 873, 91 S.Ct. 106, 27 L.Ed.2d 111 (1970).

4. The Court: Any questions on the Rule?
Mr. Hacker (prosecutor): Yes, Your Honor.
The Court: Go ahead.
By Mr. Hacker:
Q. Mr. Rogers, when is the first time you came to Court on this case?

had not heard the court's instructions regarding the rule, but that he had heard the *entire* testimony of the aggravated assault victim. Braswell's counsel argued that he was unaware that Rogers was present, and that his testimony was material and important to Braswell's case. The court precluded Rogers from testifying.[5] Subsequent to the trial Rogers died.

Braswell next called one Anita Griffin as a witness. When she was asked by counsel if she had been with Elmer Rogers at or about midnight on April 8, 1967, the prosecution objected on the ground that testimony concerning Rogers had nothing to do with Braswell's trial and that the testimony concerned events which occurred after the alleged crime. Upon the offer of Braswell's counsel, a proffer of Miss Griffin's expected testimony was made out of the presence of the jury. Counsel stated that the witness would testify that in her presence various persons came up to Elmer Rogers and struck him about the head because he had been with Mason Braswell, and that for Rogers' protection he had to leave in the company of a detective. The court then sustained the State's objection and refused to permit Miss Griffin to testify.

The district court chose not to reconstruct in its order what occurred on the night of Braswell's alleged assault. We think a factual background is essential to an understanding of our decision. The narrative which follows is derived from the trial transcript, and includes testimony from prosecution witnesses as well as Braswell.

### The Facts

The altercation which is the subject of this litigation occurred in the Big Steer Bar located in the vicinity of several horse farms in Dade County, Florida. According to Braswell he and a friend Elmer Rogers entered the Big Steer for the first time on April 8, 1967, the night of the alleged crime. Braswell testified that he and Rogers sat down and ordered drinks. After the drinks came Braswell told Rogers he was going back to "challenge on the pool table." [When a new person wanted to break into a pool game he would place a quarter on the table and then wait his turn]. Braswell claimed that he placed his quarter on the table and went back into the bar.

William Porter, witness for the prosecution and the victim of the alleged assault, testified that Braswell came in the pool room and asked to challenge the ta-

A. Yesterday.
Q. And it was?
A. Monday, was the first time I was down here, Monday morning.
Q. When the trial started?
A. Yesterday.
Q. Yesterday?
A. Right.
Q. That is when the Court was in session, and this trial was underway?
A. Yes.
Q. You were sitting in the front row, were you not?
A. In the third row on the left, here.
Q. Right.

Rogers thereafter told the prosecutor that he came in just as a young lady was being dismissed from the stand. He heard none of her testimony. He did hear all of the victim's, Mr. Porter's testimony. The prosecution then asked the court to exclude Rogers as a witness because he was in the courtroom "during one of the witnesses' testimony."

5. In response to a question by the court as to what he had to say, Braswell's attorney, Mr. Carlton, stated:

> Your Honor, I was unaware of his presence in the courtroom. I didn't see him come in, and I didn't know anything about it.
> I feel that his testimony is definitely material to this case, and it is important for it to be heard by this jury. And that there is nothing that he heard, from the testimony there, that would, in any iota, change his testimony here today.

The Court: Is that all?
Mr. Carlton: Yes, sir.
The Court: The State's objection will be sustained.
The witness will be precluded from testifying for violation of the Witness Rule.

ble and then left. Later Braswell came back and asked "was he up." Braswell then went to the next table and asked if he could challenge the game. John Green was at that table. The next thing Porter knew Green was on the floor.

Braswell testified that when he went back in the pool room a "guy with glasses on" (John Green) picked up Braswell's quarter. Braswell said he told Green that the quarter was his and had been put there to challenge the game. According to Braswell, Green said no it is not your quarter. When Braswell reached down to get it, Green pushed him. Braswell responded by hitting Green.

Green did not testify because of physical disability resulting from an unrelated accident. However, Mrs. Green, his wife, did testify. She stated that Braswell just "nonchalantly walked up, hit my husband, and knocked him cold." Mrs. Green testified that there was a man sitting at the bar who said he came with Braswell.

Mrs. Porter, William Porter's wife, gave no description of the events leading up to Braswell's encounter with Green. She simply testified that Braswell hit him.

After Braswell struck Green it is undisputed that three to four men grabbed Braswell and pulled, shoved or otherwise dragged him outside. Jack Tierney, a blacksmith, was in the bar waiting for some friends when he turned around and saw Green on the floor. He testified that he saw three or four men pulling Braswell out, so he followed them. He was going to help Braswell. Tierney had never seen Braswell before that time. When Tierney got outside he saw Braswell and another man squared off, so he did not interfere. Tierney testified that he went out to prevent Braswell from being "jumped." The fight was broken up by several other persons and everyone went back into the bar. Tierney further testified that the man who had originally been sitting with

Braswell left later in the evening, after the fight, with a girl.

Braswell's description of what happened after he struck Green was substantially the same as Tierney's, except that Braswell testified that after the fight the men who dragged him outside told him to "get the hell away from there, and never come back." Braswell started to leave but remembered that his friend Rogers was still in the bar. Braswell was afraid the men might attack Rogers, who had recently been wearing a cast and was on crutches, so he went back in.

What happened upon Braswell's reentry was described by all of the witnesses. Mrs. John Green testified that when Braswell returned, Porter started toward him to ask him to leave without trouble. Braswell then, according to Mrs. Green, began stabbing Porter with a pocket knife. She then saw Jack Tierney step between them and Braswell cut Tierney. Mrs. Green testified that Porter had no *weapon*.

William Porter testified that Braswell came back into the bar immediately after the scuffle outside, had a few drinks, and then left. Soon thereafter Braswell burst back into the room running toward Porter. Porter testified that he (Porter) had a pool cue in his hand. When Braswell got close to Porter, Porter stepped in front of him to try to tell him to sit down and not disturb them. Porter claims that Braswell then hit him and a scuffle ensued. Porter heard someone shout, "he has got a knife." Porter never saw a knife. While they were fighting Jack Tierney stepped in and hit Braswell. Only after the fighting stopped did Porter realize that he had been cut.

Jack Tierney stated that when Braswell returned after the initial scuffle he went to the bar and joined "two other fellows." Soon thereafter Braswell left and a few minutes later came back in the bar headed towards the pool room. At the same time, Porter was seen coming out of the pool room. Tierney said

Braswell and Porter "more or less, bumped right into each other," and began fighting. Tierney heard someone say, "Hand me a bottle. He has got a knife." When Tierney saw Braswell stabbing Porter and the look on Porter's face, he ran up, grabbed Braswell's hand and told them to break it up. Braswell then wheeled on Tierney and cut him with the knife. In response Tierney knocked Braswell down and took the knife from him. Tierney identified the knife offered into evidence at the trial as the one he had taken from Braswell.

Barbara Ann Porter testified that Braswell re-entered the bar after the scuffle outside, sat at the bar for a few minutes and then left. When he came back in he met William Porter coming out of the pool room and "they ended up getting into a fight." Mrs. Porter heard no conversation between Porter and Braswell immediately prior to the fight.

Braswell's version of what happened after he reentered the bar differs in certain details from the testimony of the other witnesses. He claimed that when he went back in the bar a man standing in a group with 3 or 4 other men told him, "I thought we told you to get the hell away from here and never come back." At the same time a man (Porter) came toward him with a cue stick. The man took a swing at Braswell and the fight started. Braswell claims that two other men came up and started striking him. He testified that he was trying to get out the door when he remembered his pocket knife. He then got his knife out of his pocket and struck at least one of the men with the knife. When he got to the door he felt a "lick"

on his face which knocked him down. After that he claims he was hit in the face and kicked in the back.

### The Issues on Appeal

With this factual background we turn to the order of the district court and the contentions of the state.

After reviewing the full transcript of Braswell's trial and memoranda submitted by counsel, the district court ordered that an evidentiary hearing be held to determine the content, relevancy and materiality of the excluded witness' testimony to Braswell's defense. The order was based upon two key decisions: Holder v. United States,[6] a Supreme Court decision, and United States v. Schaefer,[7] decided by the Seventh Circuit.

In *Holder* the Supreme Court recognized the broad discretion given a trial judge as to the reception or exclusion of witnesses who have violated a sequestration order but went on to hold:

> If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under *particular circumstances* may be supported as within the sound discretion of the trial court.[8]

Neither the Supreme Court nor this court has yet spoken to the "particular circumstances" of *Holder*. The Seventh Circuit has spoken. In *Schaefer, supra,* the court held that the witness should be disqualified only when he has violated

---

6. 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893).

7. 299 F.2d 625 (7th Cir.), cert. denied, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962). Although the district court cited only *Schaefer* and the Ninth Circuit decision of Taylor v. United States, 388 F.2d 786 (9th Cir. 1967), other federal circuits, including this one, and at least one state court have taken a similar ap-

proach. *See* United States v. Bostic, 327 F.2d 983 (6th Cir. 1964); Slocum v. United States, 325 F.2d 465 (8th Cir. 1963); Easley v. United States, 261 F.2d 276 (5th Cir. 1958); Degg v. State, 150 Ala. 3, 43 So. 484, 486 (1907), followed in Mitchell v. State, 28 Ala.App. 119, 180 So. 119 (1938).

8. 150 U.S. at 92, 14 S.Ct. at 10, 37 L.Ed. at 1010 (emphasis added).

the sequestration order with "the consent, connivance, procurement or knowledge of the [defendant] or his counsel." [9] The Seventh Circuit recognized that the decision to disqualify would harm the defendant rather than the offending witness: "Sequestration of witnesses is a great aid in eliciting the truth, but disqualification of the offending witness absent particular circumstances is too harsh a penalty on the innocent litigant." [10]

After reviewing *Holder* and *Schaefer* the district court stated:

> It being undisputed that Rogers' violation of the rule was *not* due to the "consent, connivance, procurement or knowledge of the appellant or his counsel" I find in the present state of the record that the "particular circumstances" necessary to support a decision to disqualify a witness were not present in this case. [11]

However, the absence of a proffer of Rogers' intended testimony caused the court to order the hearing.

At the hearing the district court permitted Braswell and his former trial counsel to testify as to what Rogers had told them concerning the events which gave rise to the charges against Braswell. Braswell testified that Rogers had said he would corroborate Braswell's version of the incident. Braswell's attorney testified that he had expected Rogers to corroborate Braswell's story and had called him for that purpose. The State objected to the preceding testimony as hearsay.

In its final order the district court held:

> Without deciding that the procedure approved in United States v. Schaefer and Taylor v. United States is mandated to the states by the Sixth and Fourteenth Amendments, the Court

does conclude that the particular and extraordinary circumstances surrounding the exclusion of petitioner's sole corroborating witness resulted in prejudice reaching constitutional proportions. *Cf.* Washington v. Texas [388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019]. [12]

The State of Florida raises two major issues: (1) that the district court erred in permitting Braswell and his attorney to testify at the hearing as to what the deceased Rogers would have said, and (2) that a federal court is without power to invalidate a well established state procedural rule merely because it conflicts with the federal rule. We find it unnecessary to consider the State's first issue in light of the manner in which we resolve issue number two.

The State begins by pointing out that *Holder* and *Schaefer* both involved federal appellate review of lower federal court decisions. Therefore, since the cases were decided on nonconstitutional grounds the State argues that they are not controlling where state procedure is involved.

We do not disagree with that general proposition of law. However, as the State acknowledges, the district court in its second order specifically avoided grounding its decision on *Holder* and *Schaefer* but instead cited Washington v. Texas. [13] *Washington* held that the sixth amendment right to the compulsory attendance of witnesses is applicable to the states through the fourteenth amendment. The State argues that *Washington* is inapplicable to this case because the Court there merely held that an entire class of witnesses who would be allowed to testify for the state may not be excluded by state statute from testifying for the defense. In this case, says the State, the rule of sequestration applied to both parties.

---

9. 299 F.2d at 631.

10. *Id.*

11. Braswell v. Wainwright, 330 F.Supp. 281, 284 (S.D.Fla.1971).

12. *Id.* at 285 (citations omitted).

13. 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

**1154**

The State further relies upon Spencer v. Texas [14] in which the Supreme Court refused to hold unconstitutional the Texas procedure of permitting the introduction of evidence respecting a defendant's prior convictions before guilt or innocence was decided with limiting instructions that the convictions were not to be considered in passing upon the defendant's guilt or innocence. In *Spencer* the Court admitted that federal courts condemned such a practice but held that it was powerless to impose federal rules of criminal procedure upon the states where no constitutional issue was presented.

The State contends that all that is involved here are state procedural rules, and that to grant the writ would result in striking them down without any apparent justification or authority. In our view the State has failed to recognize the significance of *Washington* and the obvious distinction between *Spencer* and the present case.

■ In the absence of a justification for the invalidation of a state procedural rule, we would agree with the State. Certainly there is no requirement that state procedural rules conform in all respects with procedures in the federal courts. But when a state procedural rule comes into conflict with a fundamental constitutional right it is clear that the state rule must yield. *Washington* made the sixth amendment right to the compulsory process of witnesses applicable to the states through the fourteenth amendment. Here, in contrast to *Spencer*, the district court found that this application of the state procedural rule violated a specific and fundamental constitutional right: the right to compulsory process in obtaining witnesses. We agree.

The Florida court of appeals has recognized that the "rule" conflicts with a defendant's sixth amendment rights but has held that where it is invoked by the defendant there is a waiver of the right. Pieze v. State; [15] Cacciatore v. State.[16] This reliance on the defendant's waiver of his sixth amendment rights destroys the state court's own rationale for circumventing a fundamental constitutional right.

In Fay v. Noia [17] the Supreme Court held that the failure of a state prisoner to properly pursue state remedies did not automatically exclude him from federal habeas corpus. Only where a petitioner has "deliberately by-passed the orderly procedure of the state courts" may a federal habeas judge in his discretion deny relief. The Court went on to point out that the grant of discretion was not to be treated as a legal fiction. The Johnson v. Zerbst[18] definition of waiver was set forth as the controlling standard: "an intentional relinquishment or abandonment of a known right or privilege." [19] The *Fay* Court emphasized that the standard "depends on the considered choice of the petitioner . . . . A choice made by counsel not participated in by petitioner does not automatically bar relief." [20]

■ Braswell's counsel did invoke the rule, but it is undisputed that Rogers violated it without the knowledge, procurement, or consent of Braswell or his counsel. Braswell's pro forma act of invoking the rule does not rise to the level of a Johnson v. Zerbst waiver. The exclusion of Rogers violated Braswell's contitutional right to call witnesses in his behalf.

■ We hasten to point out that we do not invalidate state use of the rule, nor do we prescribe a particular proce-

14. 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed. 2d 606 (1967).

15. 243 So.2d 442 (Fla.App.1971).

16. 226 So.2d 137 (Fla.App.1969).

17. 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

18. 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

19. 372 U.S. at 439, 83 S.Ct. at 849, 9 L.Ed.2d at 869.

20. *Id.* (citations omitted).

dure a state trial court must follow in determining whether exclusion is proper. Upon the particular circumstances of each case the trial judge must weigh the exclusion of the witness against the defendant's right to obtain witnesses in his behalf. Where the defendant has been advised of his constitutional right and there has been a knowing intelligent waiver by the defendant, exclusion would be permissible. And perhaps the consent, procurement, or knowledge on the part of defendant or his counsel might rise to the level of a waiver and thus render exclusion proper.[21] But here there was no express waiver and no particular circumstances which would justify exclusion.

Although we think the preceding is completely dispositive of the State's case we nevertheless treat the remainder of its argument on the exclusion issue. The State contends that under Florida law the state appellate court was bound to deny relief since no proffer was made of Rogers' testimony at the trial.

In Morasso v. State[22] the Supreme Court of Florida refused to overturn a trial court's exclusion of a witness for a violation of the "rule." The court stated that such a ruling would not be disturbed on appeal unless there had been an abuse of discretion. The defendant in *Morasso* had not informed the trial court of what the defendant expected to prove by the excluded witness. The Florida Supreme Court held that it was essential that the expected testimony be set forth so that an appellate court can determine whether the evidence was properly excluded or whether there was an abuse of judicial discretion. Absent such a proffer the court held that it would be presumed that the action of the court was proper.

While such a formal proffer may be desirable it cannot serve to deprive a de-

fendant of a fundamental constitutional right. Braswell's attorney told the trial court that Rogers' testimony was important to his case and the testimony of other witnesses revealed that Rogers or someone had been with Braswell in the bar. As stated in *Morasso, supra,* the purpose of the proffer rule in Florida is to provide the trial court with an adequate basis for the exercise of its discretion and the appellate court with a basis for reviewing that exercise. In our view the record before the Florida appellate court provided such a basis.

■ We have set out the testimony in this case in some detail to make clear the setting in which this crime occurred. Because of Braswell's encounter with Green and the subsequent physical ejection of Braswell from the bar by three or four men there was an obvious air of hostility between Braswell and the others in the bar. It was Braswell's first visit to the bar and he apparently knew only one person there: his friend Rogers who accompanied him. Testimony of prosecution witnesses clearly established that Braswell had a friend with him. Braswell identified the "friend" as Rogers. Braswell did not deny cutting the victim Porter. His only defense was self-defense, and the record makes clear that the one person who might have corroborated Braswell's version of the facts was Rogers. We think the record provided ample knowledge to both the state trial and appellate courts that Braswell was claiming self defense and that Rogers was his only corroborating witness. The failure to make a formal proffer cannot be used to deprive Braswell of his sixth amendment right.

■ Closely related to Braswell's sixth amendment right is his right to a fair trial—to due process. Braswell had a right to at least present the testimony of his sole corroborating witness to the

---

21. In a case not cited by the Florida intermediate appellate court which affirmed Braswell's conviction, the Florida Supreme Court suggested that the testimony of a witness who has violated the rule should be excluded only where the viola-

tion of the rule was participated in by the party calling the witness or the party's counsel. Rowe v. State, 120 Fla. 649, 163 So. 22 (1935).

22. 74 Fla. 269, 76 So. 777 (1917).

jury. That the jury might still have returned a guilty verdict is beside the point; judgment of the credibility of witnesses is for the trier of fact.[23] The trial court arbitrarily excluded Rogers upon no other basis than that he violated the rule. Such discretion cannot be permitted when it denies a defendant a fundamental constitutional right. Under the particular and extraordinary circumstances of this case the exclusion of Rogers destroyed the fundamental fairness essential to due process in the conduct of a criminal trial.[24]

In recent decisions the United States Supreme Court has both upheld and struck down as unconstitutional state criminal procedural rules. We are particularly mindful of the Supreme Court's decision in Evans v. Dutton [25] in which the Court held that the defendant's right to confrontation had not been violated by the admission of certain hearsay evidence under a Georgia statute. The Court distinguished other cases in which it had reversed state court convictions because of the denial of the constitutional right of confrontation on the ground that all of the prior cases involved "crucial" or "devastating" evidence not present in *Evans*.[26] In *Evans* the contested testimony came from only one of twenty prosecution witnesses.

In contrast to *Evans* the excluded evidence here was "crucial." Braswell was claiming self defense. His sole corroborative witness was excluded not because of anything Braswell or his counsel did but because of the apparently innocent actions of the witness. When the court denied Braswell that witness, it denied him the right to present a defense in his behalf.

Furthermore, in *Evans* the Court listed four "indicia of reliability" which were present in that case and which the Court said have been "widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." [27] We take this to mean that something equivalent to confrontation occurred, since surely the Court did not mean that something less than the confrontation called for in the sixth amendment would meet a constitutional challenge.

■■ Applying the *Dutton* equivalency standard to this case we think that only where some overriding policy consideration is shown for the exclusion of a witness or where it can be shown that the defendant made a Johnson v. Zerbst waiver of his sixth amendment right can a trial court properly exclude a vital witness for violation of the rule. The "consent, connivance, procurement or knowledge of the defendant or his counsel" in the unauthorized presence of the witness would certainly seem to be valid reasons for exclusion.

Very recently the Supreme Court in Brooks v. Tennessee [28] held that the state interest in preventing testimonial influence must fall when it conflicts with fifth and fourteenth amendment rights. The Court held that a Tennessee statute which required the defendant to testify before any defense witness, or not at all, violated his fifth amendment right against self-incrimination and his fourteenth amendment right to due process.

Although the Tennessee statute does reflect a state interest in preventing testimonial influence, we do not re-

23. Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972).

24. *See id.*, Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961); Blackburn v. Alabama, 361 U.S. 199, 92 S.Ct. 1891, 4 L.Ed.2d 242 (1960). For the origin of the "fundamental fairness" language see Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166, 180 (1941).

25. 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

26. *Id.* at 87, 91 S.Ct. 210, 27 L.Ed.2d at 226.

27. *Id.* at 88–89, 91 S.Ct. at 220, 27 L.Ed. 2d at 227.

28. 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed. 2d 358 (1972).

gard that interest as sufficient to override the defendant's right to remain silent at trial. This is not to imply that there may be no risk of a defendant's coloring his testimony to conform to what has gone before. But our adversary system reposes judgment of the credibility of all witnesses in the jury. Pressuring the defendant to take the stand, by foreclosing later testimony if he refuses, is not a constitutionally permissible means of insuring his honesty.[29]

Surely Braswell's right to obtain and present witnesses guaranteed by the sixth amendment is just as worthy of protection as the fifth amendment right protected in *Brooks*. And in the instant case the due process violation seems even greater than that found in *Brooks*. Here the use of the "rule" effectively denied Braswell the right to present a defense in his behalf.

Justices Black, Douglas and Brennan, dissenting to the denial of certiorari from the affirmance of Braswell's conviction, summarize well the position we take here:

> While the "Witness Rule" has a valid purpose and can contribute to the search for the truth, a breach of the rule can not be used to deny a criminal defendant his constitutional right to obtain and present witnesses in his favor. U.S.Const. Amend. VI. Cf. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). A simple rule of courtroom "fairness" has been misused to destroy a sacred constitutional right.[30]

Under the particular and extraordinary circumstances presented here the exclusion of Braswell's sole corroborating witness denied Braswell his sixth amendment right, and rendered his trial fundamentally unfair.

■ Although we affirm, we find it necessary to make one modification in the judgment and decision of the district court. In its order the district court concluded that unless the State of Florida granted Braswell a new trial within a reasonable period of time, the court would be obliged to release him from the sentence presently being served. A new trial without the benefit of the testimony which Rogers would have given would be a useless procedure. Rogers is now dead. Consequently, if the State of Florida elects to retry Braswell, some appropriate provision must be made to give Braswell the benefit of the testimony which Rogers would have given. Indeed, it is the State which is responsible for the exclusion of the testimony of the deceased Rogers in violation of Braswell's constitutional rights. If the State of Florida elects to retry Braswell, it must enter into a stipulation in the nature of a judicial admission that if the witness Rogers were present he would testify to the facts which Braswell and his former trial counsel Carlton contend he would give. The State will not be required to admit the truth of Rogers' testimony, and may attack the testimony because of interest, conflict with the testimony of other witnesses, or on any other reasonable basis which generally reflect upon the credibility of the testimony of any witness. However, the State may not argue or contend to the jury that the stipulation as to the testimony of Rogers was required, or is an inaccurate statement of his testimony. The reason or necessity for entering into the stipulation or the source of the facts therein contained, will not be the subject of debate or jury argument. If the State does not wish to enter into the stipulation, the writ will issue as directed by the district court.[31]

Modified and affirmed.

29. *Id.*, 406 U.S. at 611, 92 S.Ct. at 1894.

30. Braswell v. State, 400 U.S. 873, 91 S.Ct. 106, 27 L.Ed.2d 111 (1970).

31. *See* 9 J. Wigmore, Evidence § 2595, at 601–02 (3d ed. 1940). A reference to Wigmore demonstrates that a number of state courts follow the procedure herein required.