The State of Ohio, Appellee, v. Slone, Appellant.

[Cite as State v. Slone (1974), 40 Ohio App. 2d 523.]

(No. 74AP-118—Decided July 30, 1974.)

*Mr. George C. Smith*, prosecuting attorney, and *Mr. Alan C. Travis*, for appellee.
*Mr. Gregory L. Ayers*, for appellant.

Holmes, J. This matter involves the appeal of a judgment by the Court of Common Pleas of Franklin County on a jury verdict of guilty of murder in the first degree. The defendant, the appellant herein, was charged and indicted by the grand jury for killing one Mohammed Murib on October 1, 1973.

The facts, as developed at the trial, showed that the defendant was at an establishment known as the Derby Bar, in Columbus, Ohio, on the night of October 1, 1973. While sitting at the bar, the defendant noted that Murib had entered and sat down at the opposite end thereof. The facts

as developed show that the defendant had known Murib and they had on at least two prior occasions had some altercation with one another.

The first such altercation took place at a certain steak house in Columbus, Ohio, managed by Murib, in which the defendant testified that upon his telling Murib that he was unable to pay for coffee which he had ordered and consumed, Murib threw him to the floor and began hitting him with a cue stick, considerably bruising and battering the defendant. It was further testified to by the defendant that, following such altercation, Murib had filed an assault and battery charge against defendant, but failed to appear to press charges at the time the matter was called in the Municipal Court of Franklin County. The defendant testified that it was his desire at that time, immediately following such altercation, to file a like charge of assault and battery against the deceased, but didn't do so because he was told that he would have to await the determination of the charges filed against him.

The additional altercation, which was testified to by the defendant, was one which occurred in the parking lot of the Florentine Restaurant in Columbus, Ohio. Defendant and Murib had had a discussion after seeing each other while the defendant, accompanied by a friend, one Tommy Waters, was driving on West Broad Street in the city of Columbus. Defendant, accompanied by Waters and Murib, had proceeded to the parking lot in order to discuss their differences, and defendant suggested that the two have a fair fight without the assistance of cue sticks or weapons.

The defendant testified that Murib had at the time of this incident stated that he would like to have peace with the defendant, but could not as long as the defendant was breathing because they would always be fighting. Defendant testified that Murib then made a move toward his back pocket as though to obtain a gun, which the defendant testified he had seen Murib put in his pocket, and the defendant apparently hastened back to his car and hurriedly left the premises along with Tommy Waters.

At the outset of the trial, the court, at the request of the prosecutor, had directed that there be a separation of

witnesses, and that anyone who was to testify during the course of the trial was to remove himself from the court-room.

At the opening of the defense, the defendant's counsel called Tommy Waters to testify as the defendant's first witness, but the prosecutor objected, pointing out to the court that Mr. Waters was in the court room earlier that morning in violation of the separation order. The trial court sustained the prosecution's objection to Mr. Waters' testifying and refused to allow him to testify on defendant's behalf. Counsel for defendant then proffered Mr. Waters' testimony into the record upon a voir dire examination of him.

The defense was to the effect that the accused acted in self defense, or that he was motivated by fear, when he stabbed the decedent in the Derby Bar on October 1, 1973. As previously stated, the defendant testified that at the Florentine Restaurant altercation, when he was with Tommy Waters, the decedent threatened him, and had stated that he wanted peace but could not have such as long as the defendant was alive. The defendant had called Tommy Waters as a witness to corroborate his testimony concerning the incident at the Florentine Restaurant, and the testimony proffered on voir dire would have supported the statements and testimony made by the defendant, regarding such incident.

Upon the jury verdict of guilty of murder in the first degree, the defendant appeals to this court, assigning a single error, as follows:

"I. The trial court denied defendant-appellant his constitutional rights of compulsory process for obtaining witnesses in his favor and due process when it refused to permit an important defense witness to testify after he accidentally violated an order for the separation of witnesses of which he was unaware where neither defendant-appellant nor his counsel procured, connived, or consented to such violation."

As a general rule, a trial court has the right to exclude witnesses from the courtroom during the trial. 52 Ohio Jurisprudence 2d 551, Trial, Section 68. It is our view that

whether or not witnesses are separated is discretionary with the trial court. As stated in 53 American Jurisprudence 46, Trial, Section 31:

"The court has the right, in the trial of a case, to exclude witnesses from the courtroom, but there is no doctrine requiring the witnesses to be excluded in all cases. In a few jurisdictions the exclusion of proposed witnesses from the courtroom during the examination of other witnesses is a matter of right on proper application. But the great majority of jurisdictions follow the early English rule that exclusion, separation, sequestration of witnesses, or 'putting witnesses under the rule,' as the procedure is variously termed, is a matter not of right, but of discretion on the part of the trial court. * * *"

Whether or not the trial court has properly exercised his discretion as to a separation of witnesses must be determined in the light of the facts and circumstances of each case.

However, it is pointed out in the aforestated American Jurisprudence article that a separation of the witnesses in a criminal case is seldom denied when requested, especially in a felony trial. On point, we find the following language in the early case of *Laughlin* v. *State* (1849), 18 Ohio 99, at page 103:

"It is certainly a good practice, where a party requests it, to have the witness examined separately. And we think (as in the case before us)[1] where the witness is called to testify as to the previous statements of a witness in order to corroborate the statement of such witness on the trial, it is especially necessary."

However, *Laughlin,* as well as the instant case, goes beyond the issue of the discretionary right of the trial court to separate witnesses from the courtroom, but is additionally concerned with the right of the trial court to accept, or to exclude the testimony of any witnesses who may have remained in the courtroom, or have later come

---

[1]The language in parentheses is in the decision of *Laughlin.* It should be noted that the trial sequence of this case would have presented the excluded testimony of Mr. Walters prior to the testimony of the defendant.

into the courtroom, in violation of such separation order. The Supreme Court in *Laughlin,* holding such to be discretionary with the trial court, upheld the right of the trial court to allow the testimony of a witness who remained in the courtroom contrary to an order of separation.

A very complete discussion of this area of legal consideration is to be found in an annotation entitled "Effect of Witness' Violation of Order of Exclusion," 14 A. L. R. 3rd 16, 22, wherein it is stated:

"The violation by a witness of an order of exclusion gives rise to various legal questions as to the effect of such disobedience on himself and on the parties. All of the courts agree without dissent that if a witness intentionally disobeys an order of exclusion, he may be punished for contempt of court, and so may the party or counsel calling the witness, if he aided or abetted the violation. This right of the court to punish a person for the intentional violation of an exclusion order is based upon the common-law or statutory power of a court to punish a disobedient witness, or a party or counsel aiding or abetting him, for contempt of court.

"In contrast to this well-settled rule, there is a sharp diversity of opinion relating to the reception of the testimony of a witness who has violated an order directing his exclusion from the courtroom. It is with this question that most of the cases are concerned. All of the American cases agree that a violation of the exclusion order does not result in an automatic disqualification of the witness, but somewhat differing views exist as to the extent of the trial court's power to exclude the testimony of the violating witness. Most of the cases contain the broad statement that it is within the sound discretion of the trial court to determine whether the testimony of a violating witness shall be received, and that an appellate court will interfere with the trial court's decision only in the case of an abuse of discretion. Some of the cases, even though referring occasionally to the court's discretionary power, express the view that a mere violation of a separation order does not, of itself, disqualify the witness, and that the court has no power to exclude his testimony on that ground alone,

while another group of cases express the view that the trial court has no power to exclude the testimony in cases where the party or the counsel calling the witness was not at fault for the violation. * * *"

The article in 53 American Jurisprudence 48, Trial, Section 33, on this subject, similarly points out that there are basically three broad categories of views on the authority of a trial court to exclude testimony of witnesses who have violated separation orders. The article states, in pertinent part, as follows:

"There is a sharp diversity of opinion as to what shall be done when a witness who has violated an order directing his exclusion from the courtroom is presented. One view is that in such a case it is within the sound discretion of the trial court whether the testimony of such witness shall be received, but that there may be such an abuse of discretion in rejecting evidence as will justify interference by an appellate court, and a refusal to receive evidence where the party is without fault may violate his constitutional rights. * * *

"Another view is that a witness' violation of the order of the court after being placed under the rule will not alone disqualify him, and that the court has no power to exclude his testimony for this reason. These authorities hold that the party calling the witness is entitled to his testimony in any event, notwithstanding the violation of the rule.

"A third view is that where a witness who has been put under the rule violates the order of the court without the consent, connivance, or procurement of the party calling him or of the counsel representing such party, the witness is not thereby rendered incompetent to testify, and that the party calling him cannot, on account of the violation of the order without his fault, be rightfully deprived of the testimony of such witness. Under this view, if the party is at fault the evidence may be excluded. * * *"

The aforestated annotation in 14 A. L. R. 3d sets forth *Laughlin* v. *State, supra,* as being one of the leading cases in support of the rule that the trial court has broad discretion as to the reception of testimony of a witness who

violated a sequestration or separation order.

Indeed, the second paragraph of the syllabus of *Laughlin* did pointedly grant such discretion to the trial courts, as follows:

"Where the witnesses in a cause have been ordered by the court, at the request of a party, to withdraw, and one of them remains, in violation of the order, and hears the testimony of the other witnesses, it rests in the discretion of the court whether he shall afterwards be permitted to testify in the case."

However, as in other areas of legal consideration, where there may be found changes of rules stemming from changing judicial philosophies of the time, we note a change of stance in Ohio regarding the discretionary authority of the trial court in this regard.

In 1883, the Supreme Court of Ohio, in the case of *Dickson* v. *The State* (1883), 39 Ohio St. 73, reflected its change of attitude in this area of the law by holding that, where a witness violates an order of the court without the consent, connivance, or procurement of the party calling him or of the counsel representing such party, the witness is not thereby rendered incompetent to testify, and the party calling him cannot, because of the violation, be rightfully deprived of the testimony of such witness.

The first paragraph of the syllabus of the court in this regard is as follows:

"While the court is vested with discretion to refuse or permit the examination of a witness who has remained in court, by procurement or connivance of the party calling him, in violation of an order for the separation of witnesses, it is vested with no such discretion to prevent such examination where there has been no such procurement or connivance; but the order is to be enforced by the officers in attendance, and disobedience of it punished by the court as for contempt."

There appears to be many jurisdictions that follow this rule and consider it the most reasonable in its application.

It is pointed out in the A. L. R. annotation previously referred to that in *United States* v. *Schaefer* (1962), 299

F. 2d 625, the court had, in the words of the annotator, observed "* * * that there were decisions which held that it was within the trial court's discretion to allow a witness who had disobeyed the rule to testify, and stating that it may be reasoned logically that a discretion cuts both ways, the court said, however, that it would interpret the decision in *Holder* v. *United States* (1893), 150 U. S. 91, 37 L. ed. 1010, 14 S. Ct. 10, to mean that a court may not disqualify the witness merely because he disobeys the rule, but that this alternative is available if particular circumstances are shown, and, from the better-reasoned state court decisions, these particular circumstances would be interpreted to mean some indication that the witness was in court with the 'consent, connivance, procurement or knowledge of the defendant or his counsel.' " (14 A. L. R. 3rd at 47.)

In *Braswell* v. *Wainwright* (C. A. 5, 1972), 463 F. 2d 1148, we find the pertinent headnotes to be as follows:

"5 Excluding a witness upon no other basis than that he violated sequestration order cannot be permitted when such denies a criminal defendant a fundamental constitutional right.

"6. Only where some overriding policy consideration is shown for the exclusion of a witness or where it can be shown that the defendant made a Johnson v. Zerbst waiver of his Sixth Amendment rights can a trial court properly exclude a vital defense witness for violation of the 'rule' regarding sequestration of witnesses.

"7. The consent, connivance, procurement or knowledge of defendant or his counsel in the unauthorized presence of a witness would certainly seem to be valid reasons for excluding the witness on ground of violating sequestration order."

We find the same general law, as pronounced by the Supreme Court of Washington, in the case of *State* v. *Johnson* (Wash. 1969), 462 P. 2d 933, in the headnotes as follows:

"8. The power to exclude witnesses from courtroom falls within general discretionary powers of court to be exercised during trial in aid of eliciting the truth, promoting orderly presentation of evidence, and to assure that

all parties, in exercise of reasonable diligence, are afforded fair opportunity to offer all relevant evidence.

"9. If through inadvertence, inattention or mistake an excluded witness remains in courtroom under circumstances which show that the witness and the party who calls him are innocent of intention to violate the court's order, it is generally an abuse of discretion to deprive a party without fault of substantive evidence.

"10. Where court receives testimony of witness who failed to comply with order of sequestration, court's ruling will not be disturbed on review unless special circumstances are shown that witness remained in courtroom with consent, or connivance, or knowledge of party calling him."

The position of the Supreme Court of Ohio, as previously set out in *Dickson, supra,* was reaffirmed in the case of *McHugh* v. *The State* (1884), 42 Ohio St. 154, where, in the decision of the court, we find the following language, at page 159:

"* * * There was nothing, however, to show that McHugh or his counsel had in any way encouraged the witness to violate the order, or even knew, when he was called, that he had violated it, and the court found as a fact, that the witness did not even know that the order had been made. *Dickson* v. *State,* 39 Ohio St. 73, was direct and sufficient authority for holding such action of the court [in excluding the testimony] to be clearly erroneous, and hence it was the imperative duty of the court to reverse the judgment. Of what avail is the constitutional provision (Art. I, §10), that the accused shall 'have compulsory process to procure the attendance of witnesses in his behalf,' if the testimony of witnesses is to be excluded on such ground?

"It is due to the judge presiding at McHugh's second trial to say, that the ruling for which we reversed the judgment was doubtless based on remarks of Caldwell, J., in *Laughlin* v. *State,* 18 Ohio 99, as to the discretion of the trial judge, and that *Dickson* v. *State* had not been decided at the time of McHugh's second trial. But the remarks in the rule upon the subject settled to the entire satisfaction of all the judges of this court. in *Dickson's case,* and to

reverse the second conviction of McHugh was simply to follow that decision.''

It would appear from our research that such remains the law of Ohio, which of course must be applied to the facts of the case at hand.

In the instant matter, the facts are that the trial court properly ordered a separation of witnesses; that counsel for the defendant was aware of such separation order; that the witness in question had arrived subsequent to such order; and that defendant's counsel had seen such witness in the hallway, but the witness had not been directly informed that he was not to appear in the courtroom because of the separation order. Following this, the proposed witness, Tommy Waters, did come into the courtroom and sit through a portion of the state's case being presented at such time.

There does not appear to be, and there is not claimed to be, any procurement or connivance by the party calling this witness or by his counsel, in violation of such separation order.

The defendant argues that Mr. Waters was not present when the court imposed the separation order and there was nothing to indicate that he was aware of it. Further, the defense counsel argued that Mr. Waters' proposed testimony did not concern anything which other witnesses had testified to at the trial during the time he was sitting in the courtroom but, on the contrary, was concerned with matters which were completely independent of such prior testimony and, more specifically, such was testimony which would relate to the incident which took place on the Florentine Restaurant parking lot.

The defendant further argues, compellingly, that the assistant prosecutor, in his closing argument to the jury, had pointed out to them that the fear of the deceased, as claimed by this defendant, was partially based upon the threats upon his life, as allegedly made by the deceased to the defendant at the time of the Florentine Restaurant parking lot incident. Further, defendant states that the assistant prosecutor, in his final argument to the jury, pointed out that there was corroboration of neither the

meeting at the Florentine Restaurant, nor of the threats upon the defendant's life by the deceased.

In the hearing on every criminal matter, the fundamental underlying consideration of the trial court is the basic fairness of every aspect of the defendant's trial. The same consideration prevails upon the review of such trial proceedings. It is our view that such comments of the assistant prosecutor were, under the circumstances, unfair, and were prejudicial to the defendant's case.

In this matter, the evidence presented by the state of Ohio did indeed show a strong case. But, where the defense was self-defense, and the attendant element of the defendant's fear of the deceased bore upon the issue of defendant's mental state with regard to whether he thought he had to defend himself, the defendant should have been afforded the opportunity to present any evidence as to such issue. Mr. Waters' testimony would have been probative evidence as to this issue.

We hold that the denial of the opportunity to present this witness under the facts of this case, where there has been no procurement, connivance, or fraud upon the part of the defendant, or his counsel; where the testimony was shown to be completely independent of that which the witness had heard, after he came into the courtroom in violation of the prior order of separation; where the witness had not heard such order; where the prosecutor has commented upon a failure of the defendant to present corroborative testimony and such failure was due to the court's exclusion of the testimony of the witness; and where the excluded testimony was not only competent but significantly important to corroborate the main element of the defense (*i. e.*, self-defense), constituted prejudicial error.

There is a very troublesome point, however, in the instant case, which admittedly militates against a finding of prejudicial error. After the court excluded Mr. Waters' testimony on the basis of the violation of the separation order, the witness remained in the courtroom during the further presentation of the defendant's case. The video record hereof will show that the trial court interrupted the proceedings to note the witness' continued presence, and

that at such time defense counsel advised the court that he had no intention of calling Mr. Waters any further.

The state argues that because Mr. Waters had been allowed to listen to the defendant's evidence in toto, there could be no effective separation order in any new trial that might be ordered by this court. It is further argued by the state that, if the defendant wished to preserve any error which he might allege was occasioned by the trial court's refusal to permit the testimony of Mr. Waters, such has been effectively waived by the continued presence of the witness in the courtroom during the presentation of the defendant's case.

This argument is not without merit, but we hold, under the facts presented here, that there was no waiver. Again we note that Mr. Waters was to be called as the first defense witness. He, in fact, was called upon voir dire and his testimony proffered prior to his hearing the defendant testify.

Mr. Waters did not testify within the area of any of the state's witnesses, so he could not have framed his testimony around them. Neither could his testimony, because of the sequence referred to, have been framed around the defendant's testimony. And as it developed, the testimony of the defendant paralleled the testimony of Mr. Waters.

On any new trial of this matter, the testimony of Mr. Waters should be limited to that which he knows independently of any other witnesses or, specifically, be limited to the area of his testimony as given previously by proffer.

Based upon all of the foregoing, the assignment of error is hereby sustained, and the judgment of the Court of Common Pleas of Franklin County is hereby reversed, and this matter is remanded for further proceedings according to law and this decision.

*Judgment reversed.*

STRAUSBAUGH and REILLY, JJ., concur.