# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-00048-SCT

**EBONI BENA WHITE a/k/a EBONI WHITE a/k/a
EBONI B. WHITE**

***v.***

**STATE OF MISSISSIPPI**

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2010 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CYNTHIA ANN STEWART |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY, JR. |
| | DEIRDRE McCRORY |
| | SCOTT STUART |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 11/07/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     A Claiborne County jury convicted Eboni White of manslaughter, and the trial judge

sentenced her to a term of twenty years in the custody of the Mississippi Department of

Corrections (MDOC).  White now appeals to this Court claiming the trial court erred by:

refusing to dismiss her indictment based on certain improper influences on the grand jury;

prohibiting her expert witness, Jeffrey Curtis, from giving his opinion at trial on the use of

force in self-defense; refusing to instruct the jury on her theory of self-defense; and not

allowing her witness, Ricky Thompson, to testify because he was in the courtroom during Curtis's testimony. Additionally, White challenges the weight and sufficiency of the evidence to support her conviction and argues cumulative error. The Court of Appeals affirmed, finding no error. Having granted certiorari on the issues of whether the trial court erred by excluding Ricky Thompson's testimony and denying White's jury instructions, we find error and reverse for a new trial. On certiorari, we limit our review to White's claims that the trial court erred in not allowing Thompson to testify and by not allowing an instruction embodying the Castle Doctrine. Finding merit to both claims, we reverse White's conviction and sentence and remand the case to the Claiborne Circuit Court for a new trial.

**FACTS AND PROCEDURAL HISTORY**

¶2.    The following facts and history were adopted from the Court of Appeals' majority opinion. Eboni White and the victim, Danielle Newsome, were students at Alcorn State University and had been friends since high school. They lived in trailer homes across the street from one another in a trailer park near Lorman, Mississippi. White lived with other roommates, and Newsome lived with her four-year-old son, Daniel. White and Newsome had a "falling out" when Newsome accused White of failing to stop for her child's school bus one morning at the end of October 2009. The bus picked up Newsome's child every morning and took him to a Head Start program. White remembers the incident as follows. That morning she was taking a football player to practice. She backed out of her driveway and stopped behind the bus. The bus's lights were on, but it had no stop sign; so White drove around the bus, to its left, and drove to Alcorn's campus. Shortly after returning home,

2

White heard banging at her door. It was Newsome, who wanted to know if White had gone around the school bus. White said yes. Newsome exclaimed, "You almost hit my f**king baby." White responded that she came nowhere near the child. Newsome then threatened White: "If something happens to my baby, I [am] going to f**k you up." White did not think much of Newsome's threat until later, when Newsome started a "campaign of harassment" against White. Newsome would call White a "b***h" every time she saw White. Additionally, Newsome told White the police were looking for her and her vehicle because of the bus incident.

¶3.     Approximately one week after the bus incident, White filed a complaint for harassment with the Claiborne County Sheriff's Office against Newsome. Martha Lott, a dispatcher with the sheriff's office, filled out the complaint form for White. White stated that on November 1, 2009, Newsome came to White's trailer door and made threats because White had driven around the school bus. Further, every time White came home, Newsome was outside waiting for her, cursing and calling White names. While, normally, Lott would contact the law-enforcement authorities when a complaint was filed, this time she did not because White did not ask her to.

¶4.     On the morning of November 12, 2009, at approximately 8:00 a.m., White started her vehicle, but she returned to her trailer with a case of beer her roommate had left in her vehicle, as she could not take it to school. She then heard banging at her door and Newsome threatening, "B***h, come outside. I'm going to get you. Come on. I know you are in there . . . ain't no way out. You're going to see me today." A neighbor also testified Newsome woke her by repeated yelling at White's trailer something to the effect of: "B***h, I'm going

3

to whoop your a\*\*. B\*\*\*h, come out of there" for approximately fifteen to twenty minutes. Another neighbor overheard the commotion and was so concerned she called the police. White stayed in the trailer for approximately an hour and a half trying to avoid Newsome, missing a college calculus test at 9:00 a.m. White made numerous phone calls to her brother, mother, and father; however, she could not get in touch with them. White's brother had dated Newsome; so White thought "he could talk to [Newsome] and figure out what was going on." When White finally reached her father, he told her to forget about her calculus test and go immediately to the courthouse and file for a restraining order. Also, he told her to bring home her handgun, which White had bought for safety during road trips, as the trips were concluded.

¶5.    At some point, White exited her trailer, with the handgun in the pocket of her backpack, heading toward the driver's door of her vehicle. Newsome came forward from her trailer across the highway, approached the driver's door of White's vehicle, and blocked White's access to her vehicle. The two exchanged words in White's driveway, where White's vehicle was parked. Witnesses recounted that Newsome again stated, "You tried to hit my baby," and asked White, "Why did you try to run over my child?" White told Newsome they had "discussed this already" and to "chill out," but Newsome responded, "No, f\*\*k that. F\*\*k that. We fixing to discuss it again." White stated that, as Newsome was approaching her, Newsome's hand came up, and there was something silver in it, which White thought was a weapon.[1] One eyewitness testified that White was cursing Newsome

---

[1] Testimony at trial showed the silver object could have been Newsome's cell phone, which White's father found lying on the windshield of White's vehicle later that day.

as well, calling her a "b***h" and stating she was "tired." White then took her handgun from her backpack and shot Newsome several times. Law-enforcement officers arrived to hear gunshots and saw a crowd of people had gathered. Newsome fell to the ground. Officers told White to put the gun down, and she threw it towards them stating, "You can have it now." As they were arresting White, someone said, "Eboni, I told you to wait in the house. I told you to wait." White, very upset, responded, "Y'all was taking too long . . . [Newsome] wouldn't leave me alone." Newsome died from multiple gunshot wounds.

¶6. White was indicted for murder. She filed a motion to dismiss the indictment for improper influence by the grand-jury foreperson, who White claimed knew and disliked her. The trial court denied the motion. A three-day trial ensued in September 2010.

¶7. At the trial, several of White's and Newsome's neighbors testified. One neighbor testified that, on the morning of the shooting, he pulled up in his vehicle to where Newsome was standing, and she told him a young lady had tried to run over her child. The neighbor told Newsome to "let it go" and return to her trailer. Newsome also tried to stop her child's bus driver, who was coming through the trailer park at the time, to tell the driver that White had tried to run over her child. Newsome then approached one of White's roommates who was outside. The roommate told Newsome she had nothing to do with the incident and to speak with White about it, and returned to her trailer.

¶8. Three neighbors testified they saw White shooting the gun. White, testifying on her own behalf, claimed she took the gun with her to take it home, on her father's advice – not to shoot Newsome. Regarding the shooting, White claimed that she had witnessed Newsome's capacity for violence in other prior instances and felt she had to protect herself.

5

Newsome's autopsy showed a total of five gunshot wounds: one to the head, three to the torso, and one to the thigh. No weapons were found on Newsome's body.

¶9. The jury found White guilty of the lesser-included offense of manslaughter. The trial judge sentenced her to twenty years in the custody of the MDOC. White's motion for judgment notwithstanding the verdict (JNOV) or a new trial was denied, and White appealed. In an eight-two decision, the Court of Appeals affirmed.

## DISCUSSION

**I.      The trial court erred in not allowing one of White's witnesses to testify because the witness had violated the sequestration rule.**

¶10. White claims the trial court improperly excluded her eyewitness, Ricky Thompson, from testifying at trial because he violated the witness sequestration rule. Mississippi Rule of Evidence 615 governs witness sequestration. It provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

M.R.E. 615. The purpose of witness sequestration is to (1) restrain witnesses from tailoring their testimony to that of earlier witnesses and (2) to aid in detecting testimony that is less than candid. **Douglas v. State**, 525 So. 2d 1312, 1316 (Miss. 1988) (quoting **Geders v. U.S.**, 425 U.S. 80, 87, 96 S. Ct. 1330, 1335, 47 L. Ed. 2d 592 (1976)). The appellate court is limited to an abuse-of-discretion standard when reviewing an alleged sequestration violation. **Whittington v. State**, 748 So. 2d 716, 719 (Miss. 1999). "Reversal is not justified unless there is a showing of prejudice sufficient to constitute abuse of discretion on the part of the

6

trial judge in not ordering a mistrial or not excluding testimony." *Id.* (citing *Douglas*, 525 So. 2d at 1318). When a witness has violated the rule, the trial court has discretion as to the proper remedy. *Finley v. State*, 725 So. 2d 226, 233 (Miss. 1998) (citing *Douglas*, 525 So. 2d at 1317).

¶11. At trial, White sought to call Ricky Thompson as a witness. The State objected, however, because Thompson had been in the courtroom for at least part of Curtis's testimony. White argued that Thompson would testify about the events surrounding the shooting and would not touch on anything about which Curtis had testified. Nevertheless, the trial court sustained the objection. The trial judge said, "[T]he rule was invoked, and if [Thompson has] been in the courtroom, I won't let him testify."

¶12. Later, White proffered that Thompson "would testify as to the circumstances surrounding the shooting with respect to what he saw and heard. The purpose of this testimony would be to support [White's] claim of self defense. And it would not relate in any manner to the testimony of Curtis."

¶13. In *Douglas*, this Court addressed the proper remedy when a trial judge knows that the sequestration rule has been violated before the witness testifies citing for guidance federal law regarding Rule 615 of the Federal Rules of Evidence, upon which Mississippi Rule of Evidence 615 is modeled:

> The federal courts have noted that the best remedy for violation of the Rule occurs at trial. At trial two situations generally arise where the trial court is called upon to deal with sequestration violations. First, there is the situation, as in this case, where the trial judge knows before the witness testifies that the witness is in violation of the Rule. As the Court of Appeals for the Fifth Circuit states, failure of a witness to comply with a sequestration order does not alone render his testimony inadmissible. *U.S. v. Suarez*, 487 F.2d 236,

7

238 (5th Cir. 1973). Whether to exclude the witness is left to the sound discretion of the judge. **U.S. v. Warren**, 578 F.2d 1058, 1076 (5th Cir. 1978). Warren goes on to say that the judge should not exclude witnesses unless he determines that the testimony will result in probable prejudice to the other party. **Warren** 578 F. 2d at 1076, n.16. In **U.S. v. Blasco**, 702 F.2d 1315 (11th Cir.1983), the Eleventh Circuit summarized that striking testimony is a serious sanction, appropriate only where a party has suffered actual prejudice and there has been connivance by the witness or counsel to violate the rule. **Blasco**, 702 F. 2d at 1327. The more appropriate sanction is a "full-bore cross-examination" of the witness on the facts of the violation of the Rule. **U.S. v. Jimenez**, 780 F.2d 975, 981 (11th Cir. 1986). Furthermore, the trial court could adequately respond to the possibility of prejudice by specifically instructing the jury that a violation of the Rule should be considered in evaluating the credibility of the witness. **Jimenez**, 780 F. 2d at 981; *see also* **U.S. v. Cox**, 752 F.2d 741, 748 (1st Cir. 1985).

**Douglas**, 525 So. 2d at 1317.

¶14.     This Court has held that, if the witness did not deliberately attempt to circumvent the sequestration rule, the appropriate remedy is to allow defense counsel an opportunity to cross-examine the witness fully about the rule violation. **Brown v. State**, 682 So. 2d 340, 349 (Miss. 1996). The U.S. Supreme Court has held that:

> If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt, and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground, merely, although the right to exclude under *particular circumstances* may be supported as within the sound discretion of the trial court.

**Holder v. United States**, 150 U.S. 91, 92, 14 S. Ct. 10, 37 L. Ed. 1010 (1893) (citations omitted) (emphasis added). The United States Court of Appeals for the Fifth Circuit has defined "particular circumstances" to mean that "the witness should be disqualified only when he has violated the sequestration order with 'the consent, connivance, procurement or knowledge of the [defendant] or his counsel.'" **Braswell v. Wainwright**, 463 F.2d 1148,

8

1152-53 (5th Cir. 1972) (quoting *United States v. Schaefer*, 299 F.2d 625, 631 (7th Cir. 1962)).

¶15.　　As the Fifth Circuit noted, defendants have a fundamental right to the compulsory process of witnesses. *Braswell*, 463 F.2d at 1153-54 (*citing Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)). In *Braswell*, the defendant's sole corroborating witness was prevented from testifying because the witness had been present in the courtroom during the aggravated-assault victim's testimony. *Braswell*, 463 F.2d at 1150, 1155. No proffer was made, and the witness died after the trial. *Id.* The United States Court of Appeals for the Fifth Circuit affirmed the district court's grant of habeas relief. *Id.* at 1149. It held that the exclusion of the witness's testimony had violated the defendant's fundamental, constitutional right to call witnesses on his behalf. *Id.* at 1154. Though the defendant's counsel had invoked the rule, the court found that the defendant had not waived his Sixth Amendment right to the compulsory attendance of witnesses by his counsel having done so. *Id.* Such waiver is proper, the court said, only if the defendant makes a knowing, intelligent, express waiver, or the witness violates the rule with the "knowledge, procurement, or consent" of the defendant or his or her counsel. *Id.* at 1154-55. As for the absence of a formal proffer, the court found that the defendant's attorney's testimony during the habeas hearing was sufficient. *Id.* at 1155. The attorney testified that the witness would have corroborated the defendant's version of events and that the testimony was important. *Id.* at 1152, 1155. The court said that the defendant's right to due process entitled him to present "crucial" evidence of his sole corroborating witness to the jury. *Id.* at 1155-56. The Fifth Circuit summarized:

> [W]e think that only where some overriding policy consideration is shown for the exclusion of a witness or where it can be shown that the defendant made a[n] [intentional, knowing] waiver of his sixth amendment right can a trial court properly exclude a vital witness for violation of the rule. The "consent, connivance, procurement or knowledge of the defendant or his counsel" in the unauthorized presence of the witness would certainly seem to be valid reasons for exclusion.

*Braswell*, 463 F.2d at 1156.

¶16.   Here, the Court of Appeals held that the trial court did not abuse its discretion in excluding Thompson as a witness. *White v. State*, No. 2011-KA-00048-COA, 2012 WL 8023585, at \*20 (Miss. Ct. App. Oct. 23, 2012). It opined that White presented a complete defense by calling fifteen witnesses during her case-in-chief; that nothing in the proffer showed a significant fact that was not presented by another witness; and that White could not show that she had been prejudiced by Thompson's exclusion. *Id.*

¶17.   Admittedly, Thompson's testimony does not appear to be as crucial to White's defense as the excluded testimony was in *Braswell*–White did, in fact, call a total of fifteen witnesses. Even so, only two of the witnesses called were eyewitnesses. Thompson would have been a third, and the details of his testimony are unknown.

¶18.   We find that the trial court abused its discretion in this instance by excluding Thompson's testimony for no basis other than a violation of the sequestration rule. The trial court should have made a determination as to the prejudicial effect of the violation. *Brown*, 682 So. 2d at 349. We decline, however, to decide whether this error constituted reversible error. As will be explained in the following issue, we also find that White was denied her right to have the jury properly instructed on her self-defense claim, which was reversible error.

10

**II. The trial court erred in refusing to instruct the jury on Defendant's theory of the case.**

¶19. White claims the trial court erred by refusing to allow her to submit a jury instruction which would have encompassed her theory of self-defense concerning the Castle Doctrine. The standard of review for the denial of a jury instruction is abuse of discretion. *Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009). "[T]he defense is entitled to an instruction covering the theory of the case so long as there is evidence in the record that would support that theory without regard to the probative value of that evidence so long as it is more than a mere scintilla of proof." *Lester v. State*, 862 So. 2d 582, 586 (Miss. Ct. App. 2004) (citing *McGee v. State*, 820 So. 2d 700, 705 (Miss. Ct. App. 2000)).

¶20. The Court of Appeals majority found that the trial court did not abuse its discretion in denying White's instruction because she failed to provide evidence supporting her self-defense theory. Believing the driveway where Newsome was killed was a "common" or public driveway, the Court of Appeals found no evidence to support a trespass claim, and thus no basis for allowing a jury instruction predicated on the Castle Doctrine. The jury-instruction conference was not transcribed; therefore, the reasons the trial court refused these instructions are not known. *White v. State*, No. 2011-KA-00048-COA, 2012 WL 8023585, at *10, n.3 (Miss. Ct. App. Oct. 23, 2012).

¶21. White's proposed instruction set forth the "Castle Doctrine" statutory presumption, as codified in Mississippi Code Section 97-3-15(3). That section provides that:

> A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling, or against a vehicle which he was occupying, or against his business or place of employment or the immediate

11

premises of such business or place of employment, if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, occupied vehicle, business, place of employment or the immediate premises thereof or if that person had unlawfully removed or was attempting to unlawfully remove another against the other person's will from that dwelling, occupied vehicle, business, place of employment or the immediate premises thereof and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred. This presumption shall not apply if the person against whom defensive force was used has a right to be in or is a lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or is the lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or if the person who uses defensive force is engaged in unlawful activity or if the person is a law enforcement officer engaged in the performance of his official duties[.]

Miss. Code Ann. § 97-3-15(3) (Rev. 2006).

¶22.   Based on our review of the record, enough evidence was presented at White's trial to at least raise a question as to whether White was entitled to the "Castle Doctrine" statutory presumption codified by Section 97-3-15. As the Court of Appeals dissent pointed out:

> [T]he record shows that the incident took place in the immediate vicinity of White's home, right next to White's vehicle. In fact, after Newsome spotted White walking to her vehicle, Newsome crossed the street and arrived at the vehicle before White even reached it. White's vehicle was parked in front of her trailer in an area referred to as a "common driveway." White shared the driveway with roommates and residents of the trailer next door. Newsome, however, lived across the street, and did not share this driveway with White. *Although the driveway was a "common" driveway, it was only common to those residents who shared it, which did not include Newsome.* A question arises to whether Newsome was trespassing when she crossed the street, came onto the property surrounding White's residence, and prevented White from leaving by blocking White's access to her vehicle. This question should have been presented to the jury.

*White*, No. 2011-KA-00048-COA, 2012 WL 8023585, *30 (¶59) (Russell, J., dissenting) (emphasis added).

¶23.    We agree with the Court of Appeals dissenters.  Given the evidence presented at trial, White was entitled to an adequate jury instruction setting forth Section 97-3-15(3)'s statutory presumption and its attending prerequisites as prescribed by that section.

## CONCLUSION

¶24.    We reverse the judgments of the Court of Appeals and the circuit court, and remand the case to Claiborne County Circuit Court for further proceedings consistent with this opinion.

¶25.    **REVERSED AND REMANDED.**

   **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR.**