WILSON, J.,
FOR THE COURT:
¶ 1. Hamin Shaheed shot and killed his girlfriend’s ex-boyfriend during an altercation at his girlfriend’s apartment complex. A Hinds County jury convicted him of first-degree murder, and the circuit judge sentenced him to life in the custody of the Mississippi Department of Corrections (MDOC), with all but twenty years suspended. On appeal, Shaheed argues that there was insufficient evidence to support his conviction, that his conviction is against the overwhelming weight of the evidence, and that the circuit judge erred by denying his requests for “stand your ground” and castle doctrine jury instructions. On cross-appeal, the State argues that the circuit judge lacked authority to suspend any part of Shaheed’s life sentence and that Shaheed could only be sentenced to life in prison.
¶2. There was sufficient evidence to support Shaheed’s conviction for deliberate design murder, and the circuit judge did not abuse her discretion in denying the jury instructions that Shaheed requested. In addition, we agree with the State that the circuit judge erred by partially suspending Shaheed’s sentence. Accordingly, we affirm Shaheed’s conviction but remand for the circuit court to impose a life sentence with no part suspended.
FACTS
¶ 3. On September 15, 2013, Shaheed was visiting his girlfriend, Lanisha Gardner, in her second-floor apartment. Around 12:30 a.m., Trinton Truss — who was previously romantically involved with Gardner — came to Gardner’s apartment and banged on the door. Without opening the door, Gardner told Truss that her boyfriend was sleeping over and that he should leave. By the time Gardner opened the door to talk to Truss, Truss was walking away from the door, throwing the “finger sign.”
¶4. Around 10:30 a.m., Truss returned to Gardner’s apartment and banged on the door again. Shaheed started to answer the door, but Gardner, who had seen Truss through the window, stopped him. Gardner knew that Truss carried a gun, and she was afraid that there would be trouble between the two men, who had never met. Through the window, Shaheed saw Truss cock his gun, and Gardner heard the click. Shaheed and Gardner then decided that Gardner should go outside and persuade Truss to leave.
¶5. As soon as Gardner opened her door, Truss began talking to her. Gardner waved Truss away from the door and motioned for him to walk down the stairs and away from the apartment. She and Truss left the breezeway of the apartments and walked down the stairs and out onto the sidewalk. According to Gardner, Truss was upset, “talking erratic,” and asking why her boyfriend was there. Truss stated that he thought that he and Gardner were in love, and he told her to “shut up” whenever she asked him to leave. During this exchange, Gardner was facing Truss with her back to the stairs to her apartment.
¶6. Still in the apartment, Shaheed heard yelling and looked for Gardner and Truss from the apartment windows. Unable to see either of them, Shaheed left the apartment with his gun on his hip. He testified that he approached Truss and Gardner and asked, “Is there a problem? What’s going on? Are you okay?” According to Shaheed, Truss responded, “Ain’t shit going on, my nigga. What’s up.” Sha-heed and Gardner both testified that Truss *1109 then reached for his pistol, which was inside his waistband.
¶ 7. Truss and Shaheed then struggled. Shaheed claims that he was only trying to prevent Truss from drawing his gun. But according to Shaheed, Truss broke free and again attempted to draw his gun. Sha-heed then pulled his own gun and shot Truss three times in the head. After shooting Truss, Shaheed fled the scene.
¶ 8. Tijuana Collins, another resident of the apartment complex, was the only other eyewitness to the shooting. At trial, she testified that she saw Truss and Shaheed tussling and that Truss “pulled his hand up and [Shaheed] shot him.”
¶ 9. Truss was taken to the hospital but died from his wounds. Officer Robert Buf-kin ' of the Jackson Police Department (JPD) testified that a gun was recovered from Truss’s body at the hospital. Bufldn testified that the gun was “locked and loaded, ready to go.” JPD Officer Obie Wells also testified that a gun was-found in Truss’s pants “in between his legs.”
¶ 10. A grand jury indicted Shaheed for first-degree murder. At trial, Shaheed stipulated that he shot Truss and caused his death. After a three-day trial, the jury found Shaheed guilty of first-degree murder.
¶ 11. Post-trial, Shaheed filed motions for a judgment notwithstanding the verdict and a new trial, but the trial court denied his motions. The trial court sentenced him to life imprisonment, “with all suspended except 20 years.” Shaheed appeals his conviction, and the State cross-appeals the partial suspension of his life sentence.
DISCUSSION
I. Weight and Sufficiency of the Evidence
¶ 12. Shaheed argues that he is entitled to a judgment of acquittal or, in the alternative, a new trial because, in his view, no reasonable juror could have found that he did not act in self-defense. Therefore, he argues that there is insufficient evidence to support a conviction for first-degree murder or,, at the very least, that the conviction is against the overwhelming weight of the evidence. When addressing a challenge to the sufficiency of the evidence, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss. 2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The issue is not whether we would have found Shaheed guilty based on the evidence presented at trial; rather, his conviction must be affirmed if the evidence was sufficient for “any rational trier of fact” to have returned a guilty verdict. Id. ‘When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. at. 844 (¶ 18). The evidence should be “[v]iewed in the light most favorable to the verdict,” and we will affirm unless “[t]he trial court ... abuse[d]- its discretion in denying a new trial.” Id. at (¶19).
¶ 13. The testimonies of Shaheed and Gardner, though challenged or impeached in some, respects at trial, generally support Shaheed’s claims that Truss reached for his gun first; that Shaheed struggled with Truss in an effort to keep him from pulling his gun; and that Shaheed shot Truss in self-defense only after Truss broke free and again reached for his gun. The only other witness to the shooting, Collins, a *1110 resident of another apartment in the complex, testified ‘ at • trial, “I seen two guys tussling. The next thing I know, [Truss] pulled his hand up and [Shaheed] shot him.” Collins was some distance away from the men when Truss was shot, she did not see what led up to their “tussling,” and at trial she never clarified her ambiguous testimony that Truss “pulled his hand up.” Collins did not see Truss’s gun, but it was undisputed that he had a gun on his person. If this were all of the evidence in the record, it is possible that Shaheed’s conviction for deliberate design murder would have to be reversed.
¶ 14. However, JPD Detective Jermaine Magee testified that Shaheed shot Truss while Truss “was trying to defuse the situation [by] raising his hands and being advised that he didn’t want any part of the altercation.” On cross-examination, Magee again testified that Shaheed shot Truss while Truss was trying to defuse the situation by “raising his hands and moving away from” Shaheed. Magee was not present when Truss was shot; rather, he testified — without objection — based on what Collins told him during an interview at the crime scene. Magee also testified — without objection — that Shaheed displayed his gun as he approached Truss, but Truss never displayed his gun. This testimony was based on his interviews with Collins and Gardner.
¶ 15. Before Magee took the stand, JPD Corporal Sandra Dalton had given similar testimony. Shaheed objected to Dalton’s testimony on hearsay grounds, but his objections were overruled. Shaheed did not assert any similar objection to Magee’s testimony. Nor did Shaheed request or receive any sort of continuing objection or raise the issue again at any point at trial. Also, on appeal Shaheed has not challenged the trial court’s evidentiary rulings or the admissibility of Dalton’s or Magee’s testimony.
¶ 16. “[U]nobjected-to hearsay evidence, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting á verdict the same as any other competent evidence.” Veal v. State, 585 So.2d 693, 697 (Miss. 1991). “Hearsay evidence, where admitted without objection, may properly be considered and given its natural and logical probative effect, as if it were in law competent evidence. Hearsay evidence admitted without objection may be regarded as sufficient to establish a fact in controversy.” Burns v. State, 438 So.2d 1347, 1350 (Miss. 1983) (quoting Citizens Bank of Hattiesburg, v. Miller, 194 Miss. 557, 566, 11 So.2d 457, 459 (1943)) (brackets, ellipsis omitted). The McCormick treatise on evidence elaborates:
If [inadmissible] testimony is received without objection, it becomes part of the evidence in the case and is usable as proof to the extent of its rational persuasive power. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. The inadmissible evidence, unobjected to, may be relied on in argument, and alone or in part it can support a verdict or finding. At the trial court level, a party may rely on the evidence to defeat a directed verdict motion; and on appeal, the party may use the evidence to uphold the legal sufficiency of the evidence to support a judgment. This principle is almost universally accepted.... [This principle] is most often invoked with respect to hearsay ....
McCormick on Evidence § 54 (Kenneth S. Broun ed. 7th ed. 2013) (emphasis added; footnotes omitted).
¶ 17. In general — and subject to numerous exceptions — hearsay is inadmissible because it is'unsworn, because the *1111 declarant cannot be cross-examined, and/or because the jury cannot observe the declarant’s demeanor to assess his or her truthfulness or reliability. These are all issues related to the trustworthiness or reliability of hearsay. See Parham Williams, Williams on Mississippi Evidence § 8.01 (2016)-. Hearsay is not excluded because it is irrelevant or lacks probative value. If that were the case, hearsay would be excluded under Mississippi Rules of Evidence 401 and 402, and the “hearsay rule” would be unnecessary. Rather, hearsay may have probative value, and once it is admitted without objection, the jury— not a reviewing court — must decide what weight to give it. See Chambers v. State, 711 S.W.2d 240, 246 (Tex. Crim. App. 1986). “When a criminal case is tried to a jury, the members of the jury act as the finders of fact” “and decide ... what weight to give to any particular piece of evidence.” Brown v. State, 764 So.2d 463, 467 (¶ 9) (Miss. Ct. App. 2000).
¶ 18. Therefore, in this case, there was competent evidence before the jury that Shaheed approached Truss with his gun drawn and then shot Truss while Truss was backing away with his hands raised in an attempt to defuse the argument. This was sufficient to support the jury’s verdict that Shaheed murdered Truss with deliberate design and not in self-defense. See Miss. Code Ann. § 97-3-19(l)(a) (Supp. 2016) (“The killing of a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder _”). Whether we would have returned the same verdict on the evidence presented is not the relevant question at this stage; rather, viewing the evidence in the light most favorable to the verdict, the only issues are whether there was sufficient evidence for a rational trier of fact to have returned the verdict and whether the trial judge abused her discretion by ruling that the verdict was not contrary to the overwhelming weight of the evidence. Based on the testimony discussed above, there was sufficient evidence to support the verdict, and the trial judge did not abuse her discretion by denying Shaheed’s motion for a new trial.
¶ 19. The dissent[1] argues that the trial judge committed “plain error” by not sua sponte preventing Magee’s testimony about what Collins and Gardner told him. On that basis, the dissent would exclude Magee’s (and Dalton’s) testimony from consideration and hold that the remaining evidence is insufficient to sustain Sha-heed’s conviction for first-degree murder. We disagree with the dissent’s approach for at least two reasons.
¶20. First, as noted above, Sha-heed did not merely fail to object to Ma-gee’s testimony; his own attorney elicited the incriminating hearsay again on cross-examination.[2] “[A] criminal defendant who fails to object to evidence introduced by the State may still have the issue reviewed on appeal for plain error. However, a criminal defendant who affirmatively introduces evidence himself may not then *1112 complain on appeal that he introduced that evidence.” Pascagoular-Gautier Sch. Dist, v. Bd, of Supervisors of Jackson Cty,, No. 2014-CA-01774-SCT, — So.3d-, -, 2016 WL 6125423, at *6 n.9 (Miss. Oct. 20, 2016) (emphasis added; citation omitted); see also Fleming v. State, 604 So.2d 280, 289 (Miss. 1992) (“It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial.”); Williams, supra, at § 8.04. Thus, even under the plain error doctrine, Shaheed cannot complain of testimony that his own attorney elicited.
1121. Second, “in order to determine if plain error has occurred, we must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether the error has prejudiced the outcome of the trial.” Green v. State, 183 So.3d 28, 31 (¶ 6) (Miss. 2016) (emphasis added; brackets, quotation marks omitted). No “legal rule” requires a trial judge to exclude hearsay in the absence of an objection. Trial judges are not expected to strike or exclude hearsay sua sponte. Whether to object is a decision left to the discretion of counsel, who may have strategic reasons for not objecting. The dissent’s approach would require a trial judge to insert herself into the role of counsel and sua sponte raise hearsay objections on the defendant’s behalf (or risk subsequent reversal based on “plain error”). Because no “legal rule” requires that of a trial judge, the judge in this case committed no error — plain or otherwise — by not acting sua sponte to prevent or strike Magee’s testimony. And taking into account Magee’s testimony, there is sufficient evidence to sustain the conviction.
II. Jury Instructions
¶ 22. We review the trial court’s grant or refusal of jury instructions under an abuse-of-discretion standard. Burleson v. State, 166 So.3d 499, 509 (¶ 28) (Miss. 2015). “Jury instructions must be read as a whole to determine if they fairly announce the law.” Id. (quoting Mclnnis v. State, 61 So.3d 872, 875 (¶ 10) (Miss. 2011)). A trial court may refuse a jury instruction where it “incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Heidel v. State, 587 So.2d 835, 842 (Miss. 1991).
¶23. On appeal, Shaheed challenges the trial court’s denial of two instructions. The first, D-19, stated:
The Court instructs the jury that a person is under no duty to retreat and avoid the necessity of using deadly force where otherwise a homicide is committed in self-defense.
If you find from the evidence that Ha-min Shaheed acted in self-defense because he had reasonable grounds to fear Truss ... and that [he] believed that he would suffer great personal injury and that there was imminent danger of the injury occurring then Hamin Shaheed would have no duty to retreat, whether he could have done so with safety or not.
¶ 24. The trial judge did not abuse her discretion by denying this “stand your ground” instruction. See Spires v. State, 10 So.3d 477, 484 (¶30) (Miss. 2009). The Mississippi Supreme Court and this Court have held that it is within the trial judge’s discretion to refuse a “stand your ground” instruction when the defendant’s own testimony is that he had no time or opportunity to retreat, and there is nothing in the evidence to suggest to a reasonable juror that the defendant could have retreated but did not do so. See id. at 485 (¶¶ 36-37); Thomas v. State, 145 So.3d 687, 694-95 (¶¶ 27-32) (Miss. Ct. App. 2013). That is the case here. Shaheed’s version was that he and Truss struggled; that Truss broke *1113 free and immediately reached for his pistol, which was in his waistband; and that he quickly shot Truss only to prevent Truss from shooting him. The State’s version was that Shaheed shot Truss in the head as Truss backed away with his hands raised. Neither version or any other evidence in the record pointed to an opportunity to retreat. Furthermore, other instructions adequately covered the general rules of law pertaining to self-defense. Accordingly, the trial judge did not abuse her discretion by denying Shaheed’s proffered “stand your ground” instruction. See Spires, 10 So.3d at 485 (¶¶ 36-37); Thomas, 145 So.3d at 694-95 (¶¶ 27-32).
¶ 25. Shaheed also argues that the trial judge erred by denying D-21, which was based on the “castle doctrine,” codified in Mississippi Code Annotated section 97-3-15(3) (Supp. 2016). Shaheed’s proposed instruction D-21 stated:
Hamin Shaheed’s act of killing Trinton Truss is justifiable if’ Hamin Shaheed killed Trinton Truss while resisting Trinton Truss’s attempt to unlawfully kill Hamin Shaheed or to commit a serious crime against Hamin Shaheed and while Hamin Shaheed was in the immediate area of a dwelling,
Hamin Shaheed is presumed to have reasonably feared death, great bodily harm, or a serious crime being committed against him if Trinton Truss (1) was unlawfully and forcibly entering; (2) had unlawfully and forcibly entered; or (3) was removing or had unlawfully removed Hamin Shaheed from the immediate area of a dwelling. The presumption does not apply if Trinton Truss had a right to be in the immediate area of a dwelling or if Hamin Shaheed was committing a criminal act.
¶ 26. The trial judge did not abuse her discretion in refusing this instruction because Shaheed was not in the “immediate premises” of a “dwelling” when he shot Truss. Miss. Code Ann. § 97-3-15(3). Gardner led Truss away from her front door, out of the apartments’ breezeway, down a flight of stairs, and around the corner of the apartment building before they stopped to talk. Truss went with Gardner voluntarily, and he was no longer in the “immediate premises” of a dwelling, so Shaheed was not entitled to a castle doctrine instruction.
¶27. Shaheed argues that this case is analogous to White v. State, 127 So.3d 170, 176-77 (¶¶ 19-23) (Miss. 2013), in which the Supreme Court held that a defendant was entitled to a castle doctrine instruction when she had been accosted next to her car in a driveway that she shared only with her roommates and the residents of an adjacent mobile home. However, White is distinguishable, as Shaheed shot Truss in a common area of a large apartment complex, down the stairs and around the corner from the apartment where he had spent the night. This area was not in the “immediate premises” of Gardner’s dwelling.
¶ 28. We also note that the requested instruction was not supported by the evidence for the additional reason that there was no evidence that Truss unlawfully and forcibly entered Gardner’s dwelling or its “immediate premises.” See Miss. Code Ann. § 97-3-15(3). Gardner voluntarily went outside to speak with Truss, and Truss voluntarily went with her down the stairs and around the corner. The altercation occurred only after Shaheed léft the apartment, walked down a flight of stairs and around the corner, and approached Truss. There is no evidence in the record that Truss entered, or was in the process of entering, a dwelling unlawfully and forcibly. Accordingly, the trial judge did not abuse her discretion by denying the requested instruction.
*1114 III. Sentence
¶29. On cross-appeal, the State argues that the circuit judge lacked authority to partially suspend Shaheed’s life sentence.[3] Shaheed was convicted of first-degree murder, and “[e]very person who shall be convicted of first-degree murder shall be sentenced by the court to imprisonment for life in the custody of the Department of Corrections.” Miss. Code Ann. § 97-3-21(1) (Rev. 2014). A circuit court has the authority “to suspend the imposition or execution of [a criminal] sentence” “except in a case where a death sentence or life imprisonment is the maximum penalty which may be imposed.” Miss. Code Ann. § 47-7-33(1) (Rev. 2015) (emphasis added). Since life imprisonment is the applicable sentence for first-degree murder, the circuit court had no authority to suspend any part of Shaheed’s life sentence. See State v. Hayes, 887 So.2d 184, 186 (¶ 6) (Miss. Ct. App. 2004); Marshall v. Cabana, 835 F.2d 1101, 1103 (5th Cir. 1988); Miss. Att’y Gen. Op., 2000-0239, 2000 WL 799997 (May 5, 2000). Accordingly, the circuit court exceeded its authority by suspending all but twenty years of Sha-heed’s life sentence. We vacate Shaheed’s sentence and remand the case for the circuit court to impose the sentence required by law.
CONCLUSION
¶ 30. There is sufficient evidence to support Shaheed’s conviction, the jury’s verdict is not against the overwhelming weight of the evidence, and the trial judge did not abuse her discretion in denying the “stand your ground” and castle doctrine instructions that Shaheed requested. Accordingly, Shaheed’s conviction is affirmed. The trial judge did err by partially suspending Shaheed’s life sentence. Accordingly, we vacate Shaheed’s sentence and remand the case for the circuit court to impose a life sentence with no part of the sentence suspended.
¶ 31. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF FIRST-DEGREE MURDER IS AFFIRMED. THE SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH ALL BUT TWENTY YEARS SUSPENDED IS VACATED, AND THIS CASE IS REMANDED FOR RESENTENCING CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
GRIFFIS, P.J., BARNES, ISHEE, CARLTON AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND FAIR, J.

. The separate opinion is a dissent as to this issue, so we refer to it as "the dissent.”

. On cross-examination, Magee testified as follows:
Q. And you used these magical words that [Truss] tried to defuse the situation. What did he do to defuse it?
A. Well, through the investigation it was learned that he was raising his hands and moving away from [Shaheed],
Q. Who told you that?
A. It was one of the witnesses who advised.
Q. What witness was that?
A. Ms. Collins.

. If the defendant appeals his conviction, the State may file a cross-appeal raising alleged errors in the imposition of his sentence. See Miss. Code Ann. § 99-35-103(c) (Rev. 2015); Pool v. State, 724 So.2d 1044, 1048-49 (¶¶ 23-27) (Miss. Ct. App. 1998).